IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA, GEORGIA

| | |
|---|---|
| RBW LOGISTICS CORPORATION, <br><br> Plaintiff, <br> v. <br><br> ARGLASS YAMAMURA SE, LLC, <br><br> Defendant. | CIVIL ACTION <br> FILE NO. 7:22-cv-00059-HL |

**RBW LOGISTICS CORPORATION'S RESPONSE TO
ARGLASS YAMAMURA SE, LLC'S MOTION FOR
<u>PARTIAL JUDGMENT ON THE PLEADINGS</u>**

Arglass' Motion seeks to declare section 17(g) (the "Provision") of the Master Services Agreement ("MSA") void, which operates to eliminate both Parties' recovery of all consequential, or exemplary damages, including lost profits, unless those damages are covered by insurance. (*See* ECF 28; 28-1)  Arglass argues: (1) the Provision is unenforceable as it is not prominent, and (2) is ambiguous as the parties have two different interpretations of the Provision and thus there is no meeting of the minds at bar (ECF 28, pp. 8-19).

These arguments are both legally and factually inaccurate.  Further, they attempt to sidestep clear triable issues regarding the parties' intent for a jury decide.  Indeed, the MSA was negotiated by the parties prior to execution and Arglass knew of the Provision's existence because *it was Arglass who requested its inclusion in*

93230814.1   1

*the MSA*. Arglass further misconstrues caselaw as Georgia courts focus on *unilateral* exculpatory provisions to enforce public policy. Nonetheless, Georgia courts have repeatedly found exculpatory provisions, similarly found in the MSA, to be enforceable. *2010-1 SFG Venture LLC v. Lee Bank & Tr. Co.*, 332 Ga. App. 894, 897-98 (2015).

Further, Arglass' reproduction of the MSA for this Court is misleading as it contains selective edits to aid in its argument that the Provision is unenforceable. Contrary to Arglass' statements, the Provision has a clear heading notifying the parties of the limitations of liability and damages set forth therein. Critically, the Provision is a *mutual limitation* intended to limit the risk of both parties—except when covered by insurance. Arglass' Motion asks the Court to drastically shift RBW's risk when it entered into the MSA—from damages covered by insurance up to a capped limit, to unlimited out-of-pocket damages for any consequential, special, or exemplary damages. This was never the parties' intent and conflicts with other provisions of the MSA.

Finally, for purposes of this Motion, any dispute regarding a meeting of the minds must be presumed in RBW's favor as the non-movant, and is nevertheless, a triable issue of fact. This factual dispute is inappropriate for a motion on the pleadings and the Motion should be denied in its entirety.

## FACTUAL BACKGROUND

RBW is a Georgia corporation with its principal place of business in Augusta, Georgia. (Compl., para. 1). RBW provides warehousing and logistics services within the state of Georgia. (Compl., para. 1). Arglass is a Delaware LLC with its principal place of business in Valdosta, Georgia. (Compl., para. 2). Without question, both Arglass and RBW are sophisticated business entities.[1]

On or about February 2, 2021, Arglass issued a Request for Proposal soliciting bids for warehouse services. (Compl., para. 5). Arglass was seeking a warehouse service provider to manage its plant in Valdosta, Georgia. (Compl., para. 5). In response, RBW submitted a bid. In the weeks and months that followed, the Parties engaged in negotiations regarding the MSA. (Compl., para. 10-11; Exhibit A, Declaration of Frank Anderson, para. 5-9). Arglass and RBW each retained legal counsel to assist with the contract review, drafting and negotiations of the MSA, including the Provision. (ECF No. 28-1, Section 23(K); Anderson Declaration, para. 6). Both Parties were actively involved in negotiating the Provision. (Anderson Declaration, para. 7).

Arglass' CEO, Jose Diego Arozamena, provided input about the language that was ultimately used in the Provision. (Anderson Declaration, para. 8). Notably, the

---

[1] Arglass; "Our Strengths;" https://arglass.us/our-strenghts (Boasting a "one-of-a-kind plant" which is the "the first and only plant in the world to offer a traceability system.")

Provision was not drafted unilaterally by RBW; it was a product of joint draftsmanship with input from both Parties. (Anderson Declaration, para. 8).

On June 1, 2021, the Parties entered into the MSA. (ECF No. 28-1, p. 40). The Parties' relationship then soured, and after a number of disagreements the MSA was terminated in January 2022. (Compl., para. 64).

On May 16, 2022, RBW filed Suit against Arglass for breach of contract, accounts stated, conversion, and attorney's fees. (Compl.). Arglass then counterclaimed for breach of contract and attorney's fees. (ECF No. 16).

After conducting the Rule 26 discovery scheduling conference, the Parties' agreed to mediation and this Honorable Court placed a stay on the Case until March 15, 2023. (ECF No. 24). Mediation was unsuccessful and on March 15, 2023 the stay was lifted. (ECF No. 24). On March 20, 2023, prior to any discovery being exchanged, Arglass filed this Motion for Partial Judgment on the Pleadings. (ECF No. 28).[2] The only ruling Arglass' Motion seeks is to void Section 17(g) of the Parties' MSA.[3] (ECF No. 28, p. 21).

Section 17(g) states and is displayed as follows:

---

[2] It is concerning that Arglass' Motion discloses facts it learned during the Parties' confidential mediation. (ECF No. 28, p. 3). On March 23, 2023, RBW requested Arglass withdraw this Motion and remove the violative language, which is in violation of FRE 408 and the Parties' confidential mediation agreement). Arglass, however, refused to withdraw the Motion.

[3] Despite Arglass' singular goal to invalidate Section 17G, Arglass argues many irrelevant, disputed facts in its Motion.

93230814.1    4

> "17. **Liability and Limitation of Damages.**
> …
> G. Neither Party will be liable to the other for any incidental, consequential, indirect, special, or exemplary damages of any kind, including but not limited to lost profits, lost sales, or damages due to business interruption, regardless of whether such damages were foreseeable or the other Party had notice of the possibility of such damages, without regard to the nature of the claim or the underlying theory or cause of action (whether in contract, tort, strict liability, equity, or any other theory of law) on which such damages are based except to the extent such damages are covered by insurance. Subject to the terms, conditions and limitations of this Agreement, the foregoing waiver of damages does not waive or release either party from direct damages arising from an uncured breach of this Agreement or from indemnification obligations as provided in Section 19." (ECF No. 28-1, Section 17, p. 9-10).

Although not relevant to the enforceability of the Provision, Arglass argues that an insurance coverage dispute renders the clause ambiguous. The MSA required RBW to carry certain insurance. (ECF No. 28-1, §18). Pursuant to Section 18 of the MSA, RBW obtained such insurance. (ECF No. 28-1, §18; Anderson Declaration, para. 10). In its Rule 26(a) Initial Disclosures, RBW disclosed its insurance information to Arglass: "See Travelers Cargo and Logistics Pak and Zurich Commercial General Liability insurance policies disclosed as RBW 0000001 – RBW 0000177." (RBW Rule 26(a) Initial Disclosures).

In response to Arglass' counterclaims, RBW tendered defense to its insurers. (Anderson Declaration, para. 11). RBW has been advised that two of its insurers are

93230814.1  5

providing a defense to Arglass' claims subject to a reservation of rights. (Anderson Declaration, para. 11).

## LEGAL STANDARD

A motion for judgment on the pleadings provides a means of disposing of cases when a judgment on the merits can be achieved by focusing on the content of the *competing* pleadings. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014). In other words, a judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1291 (11th Cir. 2002). To determine whether a party is entitled to judgment on the pleadings, the court accepts as true all material facts alleged in the non-moving party's pleading and must view those facts in the light most favorable to the non-moving party. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). Only when the non-movant "can prove no set of facts" which would allow it to prevail should the court grant the motion. *Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1303 (11th Cir. 2005); *Perez v. Wells Fargo N.A.*, 774 F.3d at 1335 ("If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied.").

# ARGUMENT

## I. The Provision is Clear, Unambiguous and Enforceable as a Matter of Public Policy.

It is the paramount public policy of Georgia that courts will not lightly interfere with the freedom of parties to contract. *2010-1 SFG Venture LLC v. Lee Bank & Tr. Co.*, 332 Ga. App. 894, 897-98 (2015). A contracting party may waive or renounce that which the law has established in his or her favor, when it does not thereby injure others or affect the public interest. *Id.* Exculpatory clauses in Georgia are valid and binding, and are not void as against public policy when a business relieves itself from its own negligence. *Neighborhood Assistance Corp. of America v. Dixon*, 265 Ga. App. 255, 256 (2004). Given this paramount public policy, courts "exercise extreme caution in declaring a contract void as against public policy, and should do so only when the case is free from doubt and an injury to the public interest clearly appears." *Piedmont Arbors Condominium Assn. v. BPI Constr.* Co.,197 Ga.App. 141, 142, 397 S.E.2d 611 (1990).

As demonstrated below, the Court, should avoid the "harsh" penalty of voiding the Provision. The parties freely negotiated the terms of the MSA, the Provision is mutual (rather than unilateral), conspicuous and clearly intended to limit the risks of all parties in the performance of the MSA. Finally, any finding there was a meeting of the minds requires further discovery.

### A. Arglass' Motion Manufactures Ambiguity Issues and Improperly Asks the Court to Interpret Triable Issues.

Arglass begins by arguing the Provision is ambiguous, vague, lacks clarity and thus not enforceable. (ECF 28, pp. 8-9) Arglass blithely states through counsel that the MSA's limitation of liability provision is unenforceable because the operative clause is ambiguous—*to RBW* (ECF 28, p. 10). Arglass attempts to read ambiguity into the limitation provision, which does not exist, by inserting its counsels' own statements of ambiguity in the Motion. This half-hearted argument lacks both legal authority or analysis. Further, this newly created argument is ingenuine and inconsistent with the Parties actual discussions, negotiations and revisions to the MSA prior to signing the agreement. (Anderson Declaration, para. 11).

Arglass asserts there was no meeting of the minds amongst the contracting parties. (ECF 28, pp. 11-13). Whether there was a meeting of the minds is not an issue that should be decided by a court as a matter of law. *E.g., Super98, LLC v. Delta Air Lines, Inc.*, 309 F. Supp. 3d 1368, 1373 (N.D. Ga. 2018) ("Whether the parties' minds met is generally an issue of fact for the jury to decide."). Whether a meeting of the minds occurred is a disputed fact. Arglass now says it did not occur, RBW says it did. "[I]in deciding whether [a movant] is entitled to judgment on the pleadings, the trial court must accept [a nonmovant's] well-pleaded allegations."

*Holland Ins. Group, LLC v. Senior Life Ins. Co.*, 766 S.E.2d 187, 191 (Ga. App. 2014).

For purposes of this Motion, the Court should assume there was a meeting of the minds with regards to the Provision. Questions of contract interpretation are more appropriately resolved at the summary judgment stage. *Pulmonary Assocs. of Charleston PLLC v. Greenway Health, LLC*, No. 3:19-cv-167-TCB, 2020 U.S. Dist. LEXIS 252767, at *13 (N.D. Ga. June 29, 2020) (citing *BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521, 524 (11th Cir. 2017)); *Managed Care Solutions, Inc. v. Cmty. Health Sys., Inc.*, No. 10-60170-Civ, 2011 U.S. Dist. LEXIS 138968, 2011 WL 6024572, at *8 (S.D. Fla. Dec. 2, 2011); *See, e.g., Sinclair & Wilde, Ltd. v. TWA Int'l*, Inc., No. 20-20304-Civ, 2020 U.S. Dist. LEXIS 193492, 2020 WL 6135192, at *2 (S.D. Fla. Oct. 19, 2020) ("A motion for judgment on the pleadings is subject to the same analysis as a motion to dismiss pursuant to Rule 12(b)(6).) *See, e.g.*, *Geter v. Galardi S. Enters., Inc.*, 43 F. Supp. 3d 1322, 1328 (S.D. Fla. 2014) ("[T]he Court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment.")

Arglass further claims the Provision is ambiguous because the phrase "to the extent such damages are covered by insurance" somehow leaves open the possibility that the insurance might or might not exist without any testimony from the parties. (ECF 28, p. 10)  The absurdity of this argument is highlighted as even Arglass

93230814.1  9

acknowledges the next paragraph (section 18) of the MSA not only requires insurance, but prescribes *the requisite minimum levels of insurance cover*age. (*See* ECF 28-1, Sec. 18). Indeed, in the following argument section of the Motion, Arglass nonetheless acknowledges the insurance requirement exists, undermining the very "ambiguity" it claims. (ECF 28, p. 11)

Ambiguity in a contract may be defined as duplicity, indistinctness, an uncertainty of meaning or expression. *Travelers Indem. Co. v. Pullen & Co.*, 161 Ga. App. 784, 789, 289 S.E.2d 792, 797 (1982) (citing *Novelty Hat Mfg. Co. v. Wiseberg*, 126 Ga. 800 (55 S.E. 923)). Parol evidence is admissible to explain all ambiguities, the question as to what was intended being an issue of fact for the jury. *Tarbutton v. Duggan*, 45 Ga. App. 31 (7) (163 S.E. 298). It is the duty of the court to construe contracts, but the trial court may not construe an inherently ambiguous contract. *Guest v. Mitchell*, 156 Ga. App. 815 (275 S.E.2d 799).

### B. RBW Understands There is a Meeting of the Minds But Nonetheless this is a Triable Issue for a Jury

RBW agrees that the Provision says what it means: if Arglass, or RBW, suffered lost profits as a result of a breach, the offending party would be liable to the extent such loss was covered by insurance and up to the insurance limit. (*See* ECF 28, pp. 11-12) In an effort to manufacture ambiguity, Arglass is utilizing RBW's withdrawn motion to dismiss to infer new meaning in the Provision. (*Id.* at p. 12) As such, there is no disconnect between the parties understanding of the Provision,

93230814.1   10

but to the extent questions exist as to a meeting of the minds, this a triable issue of fact. *Super98, LLC*, 309 F. Supp. 3d at 1373.

### C. The Provision is Sufficiently Prominent and Enforceable Under Georgia Law.

Arglass' final attempt to discredit the Provision is by claiming the Provision it is not sufficiently prominent, lacking nearly all the "distinguishing features required by Georgia law." (ECF 28, p. 13. First and foremost, every case relied upon by Arglass contains a unilateral limitation of liability provision. (*See* ECF 28, p. 14) That is not the case here. Rather, the Provision is *mutually beneficial*, limiting Arglass' potential exposure as much as it does for RBW.

Second, there is no requirement for any or all of the distinguishing features to be present to enforce a limitation of liability provision. Even so, Arglass focuses on two features which it claims is dispositive of the prominence issue: font and headings. (*See* ECF 28, pp. 14-18) According to Arglass, the Provision font is the same size as the rest of the MSA and the Provision contains no heading to identify or set it apart. (ECF 28, pp. 14-18).

Arglass, who negotiated for and, through counsel, inserted the subject clause into this Provision, now bemoans its font size. Arglass attempts to analogize *High Tech Rail*, 363 Ga. App. 226, to the Provision arguing both the exculpatory clause in *High Tech Rail* and the Provision use the same font size as the remainder of their

93230814.1   11

respective contracts and thus not sufficiently prominent. (ECF 28, pp. 15-16) Yet, the court in *High Tech Rail*, on summary judgment, found the exculpatory clause not sufficiently prominent as it was "in the same font used entirely throughout the contract, *and the provision [was] not in a separate section specifically addressing liability or recoverable damages.*" *High Tech Rail*, 363 Ga. App. 226, 230 (2022) (emphasis added).

Font alone is not dispositive on the issue and is rather only one of many factors of whether an exculpatory or limitation of liability clause is sufficiently prominent. *Grace v. Golden*, 206 Ga. App. 416, 417-418 (1) (b) (425 S.E.2d 363) (1992), (holding the exculpatory clause using the same typeface as the rest of the deed was prominent enough to be enforceable and the party signing the document had a duty to review the document, would have seen it. Under those circumstances, the drafters of the document had not intended to "camouflage" the provision so as to prevent it from being detected at closing.)

Here, the Provision was not buried in deceptively small font. Instead, it was consistent with the rest of the MSA, which was negotiated by *both parties*.

Arglass' reliance on *Dataforensics, LLC v. Boxer Prop. Mgmt.*, too, is in error. (ECF 28, pp. 16-17). In *Dataforensics*, the appellate court reversed summary judgment (after six-months of discovery) holding the exculpatory provision at issue was found on page 13 of the 17-page lease in Section 25, titled "Landlord's

Liability," and is in the same font as the rest of the lease. 361 Ga. App. 311, 320, (2021).

To the contrary, the Provision exists in Paragraph 17 of the MSA under the appropriately titled heading of "Liability and Limitation of Damages", in sharp contrast to *High Tech Rail* wherein the exculpatory provision appeared under the ambiguous title "Termination." (ECF 28-1, p. 9). The Provision heading is in bold and specifically states it seeks to limit damages:

> **17.    Liability and Limitation of Damages.**

At bar, the limitation of liability clause is announced, in bold font and text, by a heading that clearly informed Arglass of the clause's content: "Limitation on Liability."

This MSA at issue here is closely analogous to the agreement in *2010-1 SFG Venture* v. *Lee Bank & Trust Co.,* 332 Ga. App. 894, 899 (Ga. App. 2015) (holding that an exculpatory clause in the seventeenth of thirty paragraphs in a twelve-page document was enforceable where it was in a section entitled "Limitation on Liability of SFG" and "was not hidden in the minutiae of unrelated provisions").

In *2010-1 SFG Venture LLC v. Lee Bank & Trust Co.*, SFG lent 15 million dollars to fund the construction of a hotel. 332 Ga.App. 894 (Ga. App. 2015). After SFG loaned the money, Lee Bank bought a 3.3% interest in the loan. Lee Bank

agreed to share in profits and losses from the loan pro-rata. SFG was to manage the loan using its reasonable discretion. The agreement between Lee Bank and SFG limited SFG's liability to situations where SFG was grossly negligent or willful:

> **17. *Limitation on Liability of SFG***. SFG shall not be liable for any action taken or omitted to be taken by it or by any of its employees, members, officers, managers, contractors or agents, or any of them, for any errors of judgment under, or in connection with this Agreement, or any of the Loan Documents, except in the case of gross negligence or willful misconduct."

In analyzing the enforceability of the *unilateral* exculpatory clause, the SFG Court, instructed that the trial court wrongly determined that the limitation of liability clause was not sufficiently prominent, focusing on the fact that the clause was 'written in the same serif font [as the rest of the contract], with the same heading style, and there are no bolded or italicized words within [the clause.]' *Id.* at 898; *High Tech Rail*, 363 Ga. App. at 230 (holding while font size is one of many important factors, it is not determinative of whether an exculpatory or limitation of liability clause is sufficiently prominent). The *SFG* court went on to highlight the limitation of liability clause was contained entirely within its own paragraph. It was announced, in bold font and underlined text, by **a heading that clearly informed the reader of the clause's content**: 'Limitation on Liability of SFG.'... The paragraph was part of a collection of like paragraphs pertaining to the rights, responsibilities, representations, and warranties of SFG and the participating banks. The limitation of liability **clause was not hidden in the minutiae** of unrelated

93230814.1   14

provisions**.** *Grace*, 206 Ga. App. at 417-418; *2010-1 SFG Venture,* 332 Ga. App. at 899.

Indeed, both *High Tech Rail & Fence* and *Dataforensics,* which Arglass cites in its Motion, focus not on font size, but the fact that the exculpatory provisions were concealed under headings which do not relate to limiting liability rather than being set off in a separate section that specifically addressed liability or recoverable damages. *Dataforensics,* 361 Ga. App. 311, 320 (citing *Parkside Center v. Chicagoland Vending*, 250 Ga. App. 607, 611 (2) (552 SE2d 557) (2001) (clause at issue had no separate paragraph heading, and the typeface was the same size as in the surrounding paragraphs). *Compare Imaging Systems*, 227 Ga. App. at 644-645 (1) (exculpatory clause prominent and enforceable where it was set off in its own paragraph with the heading "'LIMITATION OF LIABILITY.'"); *Hartman v. The PIP-Group, LLC,* 349 Ga. App. 233, 235, 825 S.E.2d 601, 604 (2019).

Yet the instruction from the *SFG* Court goes further and again mirrors the facts at bar.  For example:

1. Section 17 lists all of the parties limitations to damages and are in contained in the sub parts of that section. (ECF No. 28-1, Section 17).
2. The limiting provision in *SFG* was announced by a heading in bold font. The *SFG* Court noted the heading "clearly informed the reader of the clause's content." *2010-1 SFG Venture,* 332 Ga. App. At 899. Here, 17(g)

is introduced by a bold heading which clearly informs the reader that damage limiting provisions are forthcoming. (ECF No. 28-1, Section 17).

3. Next, in *SFG,* the provision was not hidden in the minutiae of an unrelated paragraph. Same situation here. 17(g) is not hidden. In fact, 17(g) is introduced by a bold heading labeled: **"Liability and Limitation of Damages.**"(ECF No. 28-1, Section 17).

4. The *SFG* Court found persuasive that Lee Bank helped draft the agreement and thus it should have been aware of the provision. Here, Arglass helped draft the MSA and it ought to have been aware of 17(g). (Anderson Declaration, para. 5-9).

5. The *SFG* Court noted the parties' averred the agreement was "negotiated by both parties with the representation and advice of their legal counsel." Not only is this factually accurate (Anderson Declaration, para. 6), a very similar provision exists in this MSA at Section 23(K):

> **K. Authority.** Each of the Parties hereto and their respective counsel have reviewed this Agreement and agree that the normal rule of construction that any ambiguity or uncertainty in a writing be interpreted against the Party drafting the writing shall not apply in any action or proceeding involving this Agreement.

(ECF No. 28-1, Section 23(K).

6. Next, the *SFG* agreement was signed by Lee Bank's president and CEO who had "extensive experience." Again, here the MSA was signed by Arglass' CEO, who presumably has extensive experience negotiating contracts. (ECF No. 28-1, pp. 40-41).

7. Moreover, just like the *SFG* agreement was between sophisticated business entities with equal bargaining power, so too was this MSA.[1]

8. Last, unlike the *SFG* Provision, but in further support of RBW's position, the *2010-1* provision operated only to one party's favor. Here, the Provision operates to limit both Parties' indirect damages. (ECF No. 28-1, Section 17(g)).

Despite the fact the Provision is in the same font size as the rest of the MSA, given Arglass was both aware of its existence during the parties' negotiations and helped draft it, coupled with the fact that the Provision arises under the MSA section titled in bold "Limitation of Liability", the Court should find the Provision sufficiently prominent and not strike it from the MSA. (ECF No. 28-1, Section 17).

### III. ASSUMING THE LIABILITY PROVISION IS DEEMED AMBIGUOUS, THE COURT SHOULD STRIKE THE AMBIGUOUS CLAUSE RATHER THAN THE ENTIRETY OF THE PROVISION.

For the reasons stated above, the Provision is both clear and unambiguous meeting Georgia's requirement as an enforceable exculpatory provision. Assuming the Provision is deemed unenforceable as Arglass argues, the ambiguity lies in the last clause "except to the extent such damages are covered by insurance" and thus the Court should only strike the ambiguous language and not the entirety of the Provision. "The concept of severability refers to striking a distinct part [of a contract and allowing the remainder to stand], not to excising certain language contained in

93230814.1   17

a single provision." *SunTrust Bank v. Bickerstaff*, 349 Ga. App. 794, 799-800 (2019) (quoting *AMB Property v. MTS, Inc.*, 250 Ga. App. 513, 515 (2001)); *see also* OCGA § 13-1-8 (a) (allowing the severing of a non-essential term of the contract irrespective of the existence of a severability clause); *Amb Prop. v. Mts*, 250 Ga. App. 513, 515 (2001)(severing an essential term of the contract is not allowed); *Nolley v. Maryland Cas. Ins. Co.,* 222 Ga. App. 901, 904 (4) (476 S.E.2d 622) (1996) (incidental provisions are severable).

The MSA sought to contract RBW for services of Arglass' bottling facility, implementation, set up and payment for RBW's services. The Parties desired to mutually limit their liability to each other. Recovering lost profits covered by insurance is not essential to the performance of the MSA, but limiting damages is. This is evidenced by the fact that the contract contains several limitations of the Parties' respective liabilities to each other. The last clause, "except to the extent such damages are covered by insurance" operates as an ancillary term.

Therefore, should the Provision be deemed ambiguous, the Court should use caution and only strike the ambiguous language "except to the extent such damages are covered by insurance" and not the entirety of the Provision.

## CONCLUSION

For the reasons stated, RBW Logistics Corporation respectfully request this Court deny Arglass Yamamura SE, LLC'S Motion for Partial Judgment on the

93230814.1   18

Pleadings, award RBW Logistics its costs and fees, and for such further relief as this Court deems equitable and just.

This 10th day of April, 2023.	Respectfully submitted,

/s/Eric J. Meyers
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
Kevin M. Phillips (admitted *pro hac vice*)
Eric J. Meyers (admitted *pro hac vice*)
*Attorneys for RBW Logistics Corporation*
30 W. Monroe St., Ste. 1600
Chicago, IL 60603
(312) 255-7200
emeyers@scopelitis.com
JASON PEDIGO
Georgia Bar No. 140989
*Attorney for RBW Logistics Corporation*
PO Box 9946
Savannah, GA 31412
(912) 233-9700
pedigo@ellispainter.com


BRANDLEY ROWLEN
(admitted *pro hac vice)*
LEWIS BRISBOIS BISGAARD & SMITH, LLP
24 Drayton Street
Suite 300
Savannah, GA 31401
(912) 525-4960
Brantley.rowlen@lewisbrisbois.com
Georgia Bar No. 153031
*Counsel for RBW Logistics Corporation*

93230814.1   19

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a true and correct copy of the within and foregoing document on all parties in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing.

This 10th day of April 2023.

        SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.

        */s/Eric J. Meyers*
        Kevin M. Phillips (admitted *pro hac vice*)
        Eric J. Meyers (admitted *pro hac vice)*
        *Attorneys for RBW Logistics Corporation*
        30 W. Monroe St., Ste. 1600
        Chicago, IL 60603
        (312) 255-7200
        emeyers@scopelitis.com