# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA, GEORGIA

| | |
|---|---|
| RBW LOGISTICS CORPORATION, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> ARGLASS YAMAMURA SE, LLC ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action File No. <br> 7:22-cv-00059-HL |

## ARGLASS YAMAMURA SE, LLC'S
## REPLY IN SUPPORT OF
## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

**BONDURANT, MIXSON & ELMORE, LLP**
Frank M. Lowrey IV
Fredric J. Bold, Jr.
Megan E. Cambre
E. Allen Page
3900 One Atlantic Center
1201 West Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel. (404) 881-4100
Fax (404) 881-4111

*Attorneys for Arglass Yamamura SE, LLC*

## **Table of Contents**

**I.  The Court Can and Should Resolve This Purely Legal Issue Now............1**

**II.  Paragraph 17.G is Unenforceable. .............................................................3**

   A.  Paragraph 17.G is Ambiguous. ................................................................4
   B.  Paragraph 17.G is Not Prominent. .............................................................6

**III.  The Court Must Strike ¶ 17.G in its Entirety. ........................................10**

The limitation of liability provision in ¶ 17.G of the parties' agreement is unenforceable because it is *both* ambiguous *and* not prominent. That double failure makes it easy for the Court to invalidate the term here as a matter of law.

Nothing in RBW's Response changes that conclusion.

**I.  The Court Can and Should Resolve This Purely Legal Issue Now.**

Knowing that Georgia law dooms the limitation, RBW first urges the Court to ignore its defects, contending that whether ¶ 17.G is enforceable is "inappropriate for a motion on the pleadings." Resp. at 2. But nothing prohibits the Court from declaring the exculpatory clause unenforceable based on the pleadings. *See Allstate Ins. Co. v. ADT*, LLC, No. 1:15-CV-517-WSD, 2015 WL 5737371, at *6 (N.D. Ga. Sept. 30, 2015) (ruling on Motion to Dismiss "that the Exculpatory Clauses are not, as a matter of law, 'prominent, explicit, clear, and unambiguous'").

RBW does not dispute that the *lack of prominence* is a matter for the Court that rests on the pleadings—nor could it, given that the question involves nothing more than looking at the contract.

The Court can also properly strike ¶ 17.G based on its *ambiguity* at the pleading stage. RBW's contrary suggestion ignores the distinction between an ambiguous exculpatory clause, which is unenforceable as a matter of law, and an ordinary clause, where ambiguity gives rise to a question of fact to be resolved by a jury. For either type of provision, the initial question—whether ambiguity exists—

1

is a question of law that depends solely on the contract terms: "The existence of ambiguity in a contract is a question of law for the court." *State Farm Fire & Cas. Co. v. Walnut Ave. Partners, LLC*, 296 Ga. App. 648, 650 (2009).

But, critically, for an exculpatory provision like here, once the Court determines that ambiguity exists, the inquiry ends. The factfinder does not need to resolve the ambiguity or determine what the provision actually means. Instead, the Court simply strikes the provision, because an exculpatory provision "must be explicit, prominent, clear and unambiguous." *Willesen v. Ernest Commc'ns, Inc.*, 323 Ga. App. 457, 460 (2013). And the Court does so based solely on the pleadings, *i.e.*, by looking to contract language alone. *Id.* at 459–60.[1] Thus, when RBW refers to "explain[ing]" or "constru[ing]" ambiguity, those concepts miss the point entirely. Resp. at 10. Once the Court determines that ambiguity exists—as a matter of law based on the contract language—its inquiry ends. And the term is unenforceable.

The Georgia cases cited in Arglass's Motion that struck down similarly ambiguous exculpatory provisions did so based solely on the contract language. *Willesen*, 323 Ga. App. at 460–62; *Hall v. Skate Escape, Ltd.*, 171 Ga. App. 178, 180 (1984). That they did so on a motion for summary judgment makes no difference because "the answers to many contract-construction questions will be the same

---

[1] A third canon requiring the Court "to construe any ambiguities most strongly against the party who drafted the agreement," *see Willesen*, 323 Ga. App. at 460, does not apply, because the MSA includes a no-drafter clause. *See* ¶ 23.K.

2

regardless of whether they are answered at the motion-to-dismiss or summary-judgment stage." *Ralls Corp. v. Huerfano River Wind*, LLC, 27 F. Supp. 3d 1303, 1321 (N.D. Ga. 2014).

The cases RBW cites for its contrary arguments are easily distinguishable.[2]

Last, resolving this legal issue now at the outset of the case makes good practical sense by materially advancing the litigation and allowing the parties to conduct discovery with knowledge of their rights under the contract.

## II. Paragraph 17.G is Unenforceable.

Moving past RBW's effort to delay resolution of this purely legal issue, the Court must strike Paragraph ¶ 17.G because it is not "explicit, prominent, clear and unambiguous." *Willesen*, 323 Ga. App. at 460.

---

[2] For example, RBW cites Judge May's decision in *Super98, LLC v. Delta Air Lines, Inc.*, 309 F. Supp. 3d 1368, 1373 (N.D. Ga. 2018), for the proposition that "[w]hether the parties' minds met is generally an issue of fact for the jury to decide." But that case centered on the question of *formation*, *i.e.*, whether a contract existed at all, not the question of contract *interpretation*. *See id.* Contract formation involves a different analytical framework. But here, no one disputes the Agreement exists, so *Super98* has no relevance, and RBW's distracting references to "[t]riable [i]ssues" and "disputed fact[s]," *see* Resp. at 8, are out of place.

Another RBW case—when quoted fully—supports Arglass's position. RBW cites Judge Batten's decision in *Pulmonary Associates of Charleston PLLC v. Greenway Health, LLC*, No. 3:19-CV-167-TCB, 2020 WL 9073551, at *4 (N.D. Ga. June 29, 2020) for the proposition that "[q]uestions of contract interpretation are more appropriately resolved at the summary judgment stage." Resp. at 9. But RBW ignores the very next sentence, beginning with "***However***," where the court then proceeded to determine as a matter of law whether ambiguity existed based on the pleadings—exactly the opposite of what RBW suggests.

3

### A.    Paragraph 17.G is Ambiguous.

The test for ambiguity under Georgia law is an exceptionally low bar. The Court simply determines if the provision "is susceptible to more than one meaning." *Blue Ridge Auto Auction v. Acceptance Indem. Ins. Co.*, 343 Ga. App. 319, 320 (2017). If so, the Court then determines whether that ambiguity remains after applying the pertinent rules of construction.[3] *Id.*

RBW cites no authority holding that this purported limitation is unambiguous, as required, to survive. Nor does it address head-on the litany of ambiguities Arglass raised or that RBW has previously admitted. RBW merely argues that other contract provisions about insurance remove all ambiguity. But RBW is wrong.

For example, RBW's admission that ¶ 18 of the MSA requires it to *maintain* insurance up to a minimum monetary limit does not resolve the ambiguity. Neither the contract nor RBW in its response says *what* would be covered or *how* whatever coverage existed operated vis-à-vis ¶ 17.G. RBW had no answer for the ambiguities that Arglass highlighted in its Motion or the myriad others that abound:

- Must the required "below described policies," ¶ 18, contain coverage for the "lost profits" and other categories of ¶ 17.G? Paragraph 18 says nothing about the scope of coverage for any of the referenced policy types—only monetary limits.
- Does "the extent" of such damages in ¶ 17.G refer to the monetary

---

[3] For an exculpatory provision, the pertinent canons require the Court to "interpret any isolated clauses and provisions of the contract in the context of the agreement as a whole" and "to give the contract a reasonable construction that will uphold the agreement." *Willesen*, 323 Ga. App. at 459–60.

4

extent of the policy limits, the extent of the subject-matter covered, to the extent the insurer agrees to cover them, or something else?

This term is also unclear, ambiguous, and unfair because the insured RBW could change the meaning of the limitation of liability by its own self-interested conduct:

- Does "covered by insurance" in ¶ 17.G mean that the insurance merely could cover certain damages? Or must RBW successfully assert a claim that the insurer approves? What if RBW refuses to assert a claim?
- What if RBW as the insured party only half-heartedly seeks coverage, and the insurer wrongfully denies it?
- Worse still, what if RBW as the insured party (having now admitted that it was required to maintain insurance) intentionally tries to manufacture a coverage denial believing that would limit its liability?
- What obligations, if any, does RBW have after a coverage denial to contest that denial through compulsory process? And what if RBW chose to abandon that fight?

All of this highlights that this term is not clear and unambiguous, as any limitation must be. Depending on the outcome of these many ambiguities, Arglass's rights are dramatically altered. That kind of significant uncertainty is not permissible for a limitation of liability term under Georgia law, which must be "explicit, prominent, clear and unambiguous." *Willesen*, 323 Ga. App. at 460.

RBW's response also had no answer for its own prior *in judicio* admissions in its Motion to Dismiss briefing, asserting two different alternative readings of this term. *See* Motion at 14. When it didn't appreciate the consequences and was speaking forthrightly, RBW admitted to alternative readings of the term.

The Court's job at this stage is narrow, easy, and purely legal: because ¶ 17.G is "susceptible to more than one meaning," it is ambiguous. *Blue Ridge Auto Auction*,

5

343 Ga. App. at 320. The moment that ambiguity exists, the provision is unenforceable, and the Court need not even reach the failure of prominence.

### B. Paragraph 17.G is Not Prominent.

Whether an exculpatory clause is prominent depends on basic visual cues including "whether the clause is contained in a separate paragraph; whether the clause has a separate heading; and whether the clause is distinguished by features such as font size" as well as whether the provision is in "a prominent place" within the agreement. *Dataforensics, LLC v. Boxer Prop. Mgmt.,* 361 Ga. App. 311, 320 (2021). The only prominent aspect of this provision is that it is a separate paragraph. That falls far short, and the Court should strike the provision for lacking prominence.

RBW first argument—that ¶ 17.G in fact has its own header—is incorrect. By placing the header for ¶ 17 next to paragraph ¶ 17.G in its Response with an ellipsis, *see* Resp. at 5, RBW glosses over six subsections across two pages. Beyond being misleading, Judge Duffey already rejected that same argument in *Allstate*:

> Although the heading, "Section 7. LIMITATION OF LIABILITY" is bold and set off from the rest of the Contract, **Section 7 contains five separate subparagraphs**, **none of which contain a subheading**, and the Exculpatory [Clauses] embedded themselves are not set off separately. Rather, the Exculpatory Clauses are located in the middle of subparagraphs (b) and (e)—the last half of the penultimate sentences in those subparagraphs. **While the heading may be prominent, the important limiting language of the Exculpatory Clauses are far removed from that heading** and are written in the same single-spaced, small typeface as the majority of the Contract.

*Allstate Ins. Co.*, 2015 WL 5737371, at *5 (emphasis added). Because the provision

lacked prominence, the court struck it—and did so even though the provision there was written in ALL CAPS, which is not the case here, and even though the entire contract comprised only two pages. *Id.* at *7; *see Allstate* Agreement, attached as Exhibit A at 2. The intervening subsections are the same as those in *Allstate*.

RBW's second argument is equally unavailing. It contends that because ¶ 17.G. refers to both parties rather than just RBW, that makes it more prominent. But the opposite is true. For while ¶ 17.G does refer to both parties by its text, in reality, it is concerned primarily with RBW's potential liability as the service provider. That is reflected in the unilateral requirement for RBW to maintain liability insurance in ¶ 18, but also in the obligations generally imposed under the agreement and the nature of the breach claims in this case.

Arglass's primary obligation under the MSA was to pay money; RBW's primary obligation under the contract was to provide warehouse services. If Arglass failed to pay, RBW would not suffer consequential damages in the form of lost profits; it would just have a claim for the money owed—precisely what RBW has claimed here. *See* Complaint, Dkt. 1-1 ¶¶ 85, 89. By contrast, when RBW failed to provide the agreed-upon services, Arglass necessarily suffered lost profits due to its purported expert bungling the warehouse operations and failing to keep pace with the business's demands. The consequential damages resulting from those breaches are significant and are reflected in Arglass's claims. *See* Arglass's Counterclaims,

Dkt. 16 ¶¶ 133, 138, 140. The point is that ¶ 17.G does not at all apply equally to both parties; it is much closer to a unilateral limitation in RBW's favor.

Rather than increasing ¶ 17.G.'s prominence, the fact that the provision does not clearly spell out that it applies primarily to RBW further diminishes the extent to which it is "explicit, prominent, [and] clear." *Dataforensics*, 361 Ga. App. at 319–20. If RBW wanted a contract provision that strictly limited its own liability for Arglass's lost profits, it could have negotiated for terms that clearly and prominently laid that out rather than attempting to shoehorn that post-hoc interpretation into an ambiguous provision tucked in among many others. As things stand, the provision's true significance—at least as RBW seeks to apply it—is in no way reflected in how the provision is presented on the page.

These two points—the lack of a separate heading and the lack of a clear reference to the pertinent party—also distinguish this case from the one upon which RBW primarily relies, *2010-1 SFG Venture LLC v. Lee Bank & Trust Co.*, 332 Ga. App. 894 (2015), where the court declined to strike the provision. Most importantly, *SFG* does not control the Motion because the limitation there did not suffer from ambiguity like ¶ 17.G does. But even as to prominence, *SFG* involved a single limitation of liability term, which (1) had its own header that (2) expressly referenced that it was limiting a single party's liability. *See* SFG Agreement, attached as Exhibit B ¶ 17. That is not the case here.

8

Moreover, RBW cannot overcome the cases in Arglass's Motion that struck down similar provisions. *See* Mot. at 16. Two of the most recent cases were decided after *SFG*—even cited *SFG*—and yet still ruled that the terms at issue lacked prominence. *E.g., Dataforensics, LLC*, 361 Ga. App. at 320. As for Arglass's other cases, RBW ignored them.

Not only is ¶ 17.G less prominent than that in the *SFG Venture* case cited by RBW, it is also less prominent than the limitation provision in the *Dataforensics* case, which the court struck down as insufficient:

| Criterion | *SFG Venture* | *Data-forensics* | The MSA |
|---|---|---|---|
| Contained in separate paragraph | Y | Y | Y |
| Has a separate heading | Y | Y[4] | N |
| Distinguishing font features | N | N | N |
| Contained in a prominent place | N | N | N |
| **Total Elements Present:** | **2/4** | **2/4** | **1/4** |
| **Struck Down:** | **No** | **Yes** | |

That comparison also belies RBW's incomprehensible contention that *none* of the required criteria need be met. *See* Resp. at 11 ("there is no requirement for any or all of the distinguishing features to be present"). That contention cannot be squared with

---

[4] The Court can see from the agreement attached as an Exhibit to the original Motion that the provision in *Dataforensics* had a separate heading specifically for that subsection (as opposed to a general heading with many subsections, as is the case here), which was titled "Landlord Liability." Nevertheless, the court there concluded that the heading was not sufficiently prominent because it did not refer to "Limitation of Liability." *Dataforensics*, 361 Ga. App. at 320.

the way Georgia courts carefully review these indicia and weigh their presence or absence when adjudicating issues of prominence.

This experienced Court is fully capable of setting those cases side by side with this one, just like Judge Duffey did in *Allstate* (and as Arglass's Motion does). When it does, it will see that ¶ 17.G lacks prominence. Taken alone, that lack of prominence would be fatal. But especially when coupled with the ambiguity outlined above, the purported limitation of liability in ¶ 17.G cannot stand.

### III. The Court Must Strike ¶ 17.G in its Entirety.

Revealing its true realization that ¶ 17.G is ambiguous, Part III of RBW's response asks that, upon a finding of ambiguity, the Court strike only a part of ¶ 17.G. But the law does not allow that kind of rewriting. And the case RBW quotes says plain as day that approach is barred. "The concept of severability refers to striking a distinct part of a contract and allowing the remainder to stand, ***not to excising certain language contained in a single provision***." *SunTrust Bank v. Bickerstaff*, 349 Ga. App. 794, 799–800 (2019) (cited in Resp. at 17–18) (emphasis added). As the court in *SunTrust* says even more emphatically, "the severability clause, however, does not authorize SunTrust or the courts to excise a single sentence . . . from a single integrated provision." *Id.* at 800. RBW would have this Court go further and excise a phrase within a single sentence. That is not allowed. Instead, upon finding ¶ 17.G unenforceable, the Court must strike it in its entirety.

10

Respectfully submitted, this 24th day of April, 2023.

/s/ *Fredric J. Bold, Jr.*
Frank M. Lowrey IV, Ga. Bar No. 410310
Fredric J. Bold, Jr., Ga. Bar No. 544604
Megan E. Cambre, Ga. Bar No. 167133
E. Allen Page, Ga. Bar No. 640163
**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel. (404) 881-4100
Fax (404) 881-4111
lowrey@bmelaw.com
bold@bmelaw.com
cambre@bmelaw.com
page@bmelaw.com

*Attorneys for Arglass Yamamura SE, LLC*

## CERTIFICATE OF SERVICE

This is to certify that on this day, I have electronically filed the foregoing **ARGLASS YAMAMURA SE, LLC'S REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** via CM/ECF, which will cause a copy to be sent to all counsel of record.

This 24th day of April, 2023.

*/s/ Fredric J. Bold, Jr.*
Fredric J. Bold, Jr.